(Not for publication) (Docket No. 7)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| COMCAST CABLE COMMUNICATIONS, | : | |
| Plaintiff, | : | Civil No. 05-0691 (RBK) |
| v. | : | **OPINION** |
| WILLIAM FISHER, | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff Comcast Cable Communications' motion for entry of a default judgment against Defendant William Fisher, pursuant to Federal Rule of Civil Procedure 55(b)(2), for failure to appear, answer, or otherwise defend in this matter. For the reasons that follow, the Court will grant the Plaintiff's motion.

**I. BACKGROUND**

Plaintiff Comcast Cable Communications ("Comcast") operates cable television systems that provide proprietary programming, telecommunications and internet services in various regions of the United States. (Riley Decl. ¶ 3.) Comcast offers its programming services in packages. (Compl. ¶ 8.) "Basic" and "Standard" tier packages are services for which subscribers pay a monthly rate. ( Compl. ¶ 8.) Comcast also offers "Premium" programming services which cost subscribers an additional monthly fee. (Compl. ¶ 8.) Furthermore, Comcast subscribers can receive "pay per view" programming, which enables the subscribers to purchase individual

movies, sporting events, or other entertainment for a "per event" fee in addition to the subscriber's regular monthly fee for cable television service. (Compl. ¶ 9.) Although there is a variety of services available to Comcast's customers, each subscriber is only entitled to the level of services that he or she selects and purchases.

To protect its proprietary signals, Comcast engages in anti-theft services designed to block the unauthorized reception of services not paid for by Comcast subscribers. As a primary security measure, Comcast encodes or "scrambles" the signals for certain programming services. (Compl. ¶ 12.) Once an individual has subscribed to Comcast's services, that subscriber receives a decoding device that un-scrambles the services for which the subscriber has paid. (Compl. ¶ 12.) Any programming services that the subscriber has not purchased will remain scrambled and unviewable on the subscriber's television set. (Compl. ¶ 12.)

According to Comcast, on October 14, 1998, Defendant William Fisher ("Fisher") purchased a "pirate" decoding device known as a "Rampage with remote and adaptor" from Modern Electronics, Inc. (McGinnis Aff. ¶ 17.) The device enabled Fisher to intercept and receive Comcast's programming services without payment to, or authorization from, Comcast. (Compl. ¶¶ 19-21.) Therefore, Comcast initiated this lawsuit against Fisher seeking an injunction and statutory damages pursuant to the Communications Act of 1934, as amended, 47 U.S.C. § 553.[1] Comcast filed the Complaint on February 3, 2005. On February 18, 2005, Fisher received personal service of the Summons and Complaint. Copies of the Return of Service were

---

[1] The Complaint also states that Fisher's alleged misconduct violates 47 U.S.C. § 605; however, the Plaintiff voluntarily dismissed the § 605 claim prior to filing the present motion for default judgment. Moreover, the Third Circuit has found that "a cable television descrambler does not facilitate the interception of 'communications by radio' and therefore the statutory damages available under § 605 do not apply." TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 197 (3d Cir. 2001). Accordingly, the present motion deals only with a request for default judgment under § 553.

filed with the Court on March 8, 2005. (See D.E. # 2.)  To date, Fisher has not answered, appeared, or otherwise defended in this action.  Consequently, upon request by Comcast, the Clerk entered a default on June 10, 2005.  Comcast now moves the Court to enter default judgment against Fisher.  Pursuant to § 553, Comcast seeks statutory damages in the range of $250.00 to $10,000.000 plus costs in the amount of $240.00 and attorneys' fees in the amount of $2,560.00.  Comcast also seeks a final injunction to prohibit Fisher from committing any further violations of § 553(a)(1).

## II.  STANDARD FOR DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990) ("When a defendant fails to appear . . . , the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred.").  The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such "discretion is not without limits, however, and we have repeatedly stated our preference that cases be disposed of on the merits whenever practicable." Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted).

Although the Court should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); Directv, Inc. v. Asher, No. Civ. A. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure § 2688, at 58-59, 63 (3d ed. 1998)).  Consequently, before granting a default

judgment, the Court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Asher, 2006 WL 680533, at *1 (citing Wright, Miller, & Kane, § 2688, at 63); Directv, Inc. v. Croce, 332 F. Supp. 2d 715, 717 (D.N.J. 2004)).

### III. DISCUSSION

Section 553(a)(1) provides that "no person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Any person aggrieved by a violation of § 553(a)(1) may bring a civil action in federal district court. 47 U.S.C. § 553(c)(1). In adjudicating such cases, the district court may (1) "grant temporary or final injunctions on such terms as it may deem reasonable to prevent or restrain violations of [section 553(a)(1)]"; (2) "award damages"; and/or (3) "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 553(c)(2). In turn, any damages awarded by the Court must be calculated using one of two methods. The prevailing party may recover its actual damages plus any profits of the violator that are attributable to the violation of § 553(a), or the prevailing party may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250.00 and not more than $10,000.00, as the Court considers just. 47 U.S.C. § 553(c)(3)(A)(i), -(ii).

#### A. Cause of Action and Emcasco Factors

The factual allegations in the Complaint establish a valid cause of action against Fisher for a violation of § 553. Specifically, Comcast alleges that, on or about October 14, 1998, Fisher purchased a decoding device that enabled him to intercept and receive Comcast's standard,

premium, and pay per view services without Comcast's authorization.  In addition, Comcast complains that Fisher has used that decoding device to engage in the unauthorized reception and interception of Comcast's cable services.  Taking these allegations as true, the Court finds that the Complaint states a valid cause of action under § 553 because these allegations explicitly provide that Fisher intercepted and received "communications service[s] offered over a cable system" without authorization. See 47 U.S.C. § 553(a)(1).

In addition, to assess whether entry of a default judgment is appropriate, the Court must also consider three factors: (1) whether plaintiff will be prejudiced if default is not granted, (2) whether defendant has a meritorious defense, and (3) whether defendant's delay was the result of culpable misconduct. Carpenters Health & Welfare Fund v. Naglak Design, 1995 WL 20848, *2 (E.D. Pa. 1995) (citing Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987)). However, where the Defendant has not filed any responsive pleadings or otherwise shown cause why default judgment should not be granted in Plaintiff's favor, the Court is "not in a position to judge whether the Defendant has a meritorious defense or whether any delay was the result of culpable misconduct." Id.  Those two factors would have more significance in situations where the Defendant has made a tardy appearance or wishes to reopen a defaulted case.  Moreover, because Comcast has "no other means of vindicating its claim against" Fisher, Comcast will be prejudiced if the default is not granted. See Asher, 2006 WL 680533, *2 (granting default judgment where defendant "has not responded in any fashion," "has not asserted any meritorious defense," and has not "offered any excusable reason for his default").  Accordingly, the Emcasco factors weigh in favor of entering a default judgment in this case.

> **B. Calculation of Damages**

As mentioned above, § 553(c)(3)(a) authorizes the Court to award either the actual

damages caused by a violation of § 553(a) or statutory damages between $250.00 and $10,000.00, as the Court considers just. Here, because the "pirate" device was designed to defeat Comcast's security measures, Comcast had no way to determine how often Fisher actually viewed the unauthorized cable services to which he had access via the unauthorized decoder. See Comcast Cable Communications v. Cabrera, No. 04-3431, 2005 WL 3544698, at *2 (D.N.J. Dec. 28, 2005); Cablevison Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 112 (E.D.N.Y. 1997). Consequently, Comcast cannot accurately calculate the actual damages incurred by Defendant's use of the unauthorized decoder device. Therefore, Comcast requests statutory damages rather than actual damages.

In determining a "just" award of statutory damages under § 553(c)(3)(A)(ii), the Court considers the value of the services to which the Defendant had unauthorized access. Cabrera, 2005 WL 3544698, at *2. Fisher's unlawful decoding device provided him with access to Comcast's standard, premium, and pay-per-view programming. According to the evidence submitted by Comcast, pay-per-view programs are available 24 hours a day and range in cost from $4.00 to $49.99 per selection. (McGinnis Aff. ¶ 19.) Based on the average availability of these services, as well as Plaintiff's premium services, Comcast asserts that the losses caused by the use of one pirate decoding device can total several thousands of dollars per month. (McGinnis Aff. ¶ 19. ) Comcast argues that it is reasonable to conclude that Fisher has deprived Comcast of thousands of dollars in revenue because Fisher has owned a pirate decoder since 1998, and each such device generally has a useful lifespan of seven years.

Where the Plaintiff has submitted evidence that the Defendant owned an unlawful device used to steal programming services, some courts have concluded that the appropriate measure of damages is the $10,000 maximum. See e.g., Cabrera, 2005 WL 3544698; DirectTV, Inc. v.

Gendrachi, No. 03-1970, 2005 WL 350952 (D.N.J. Feb. 14, 2005). For instance, in Cabrera, the Defendant owned an unauthorized decoding device for roughly five years. Cabrera, 2005 WL 3544698, at *2. In its motion for default judgment, the Plaintiff (Comcast) submitted evidence via affidavit that Comcast could have conceivably lost $5,000 per month due to the Plaintiff's use of a single decoding device. Id. In awarding the maximum amount of statutory damages, the court concluded:

> Due to the fact Defendant did not answer the Complaint or participate in discovery, Plaintiff could not discover the current location of the device and was unable to fully calculate the maximum amount of damages suffered due to Defendant's illegal activity. Due to the fact that Defendant could conceivably [have] deprived Plaintiff of thousands of dollars per month in revenue, this Court awards Plaintiff $10,000, the maximum amount of statutory damages. This amount of damages is also appropriate to serve as a deterrence.

Id. Similarly, in a case brought under a slightly different statute governing satellite transmissions, the court awarded the Plaintiff the maximum amount in statutory damages. Gendrachi, 2005 WL 350952, at *4. In Gendrachi, the Defendant allegedly bought and used an unauthorized device designed to steal the Plaintiff's satellite programming services. Id. at *1. In the motion for default judgment, the Plaintiff argued that it lost revenue each time an unlawful device intercepted its signal; however, the Defendant's failure to appear or participate in the litigation made it impossible to quantify the total amount of damages. Id. at *4. As a result, the court awarded the maximum of $10,000 in statutory damages. Id.

For similar reasons, this Court will award Comcast $10,000 in statutory damages. Because Fisher has not appeared, answered, or otherwise defended in this action, Comcast has been unable to calculate fully the amount of damages caused by Fisher's use of the decoder. Nevertheless, it is clear that Fisher purchased an unauthorized decoding device in October 1998, which means he has likely owned the device for its entire seven year lifespan. Furthermore,

Comcast presents evidence that, during those seven years, the use of the decoder could have potentially deprived Comcast of $5000 per month. (See McGinnis Aff. ¶ 19.)  However, even if Fisher only stole services amounting to no more than $120 per month, he still would have deprived Comcast of more than $10,000 over the course of seven years/eighty-four months. Accordingly, in these circumstances, the Court finds that awarding $10,000 in damages is an appropriate amount to compensate Comcast and deter future violations.

### C. Attorneys' Fees and Costs

Section 553 also provides that the Court may award costs and reasonable attorneys' fees. 47 U.S.C. § 553(c)(2)(C).  To calculate reasonable attorneys' fees, the Court multiplies the number of hours reasonably expended by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  In making this lodestar calculation, the district court should eliminate any hours that were not reasonably expended, such as hours that appear "excessive, redundant, or otherwise unnecessary." See id. at 434.  Here, Plaintiff had two attorneys working on this matter. A partner spent 0.5 hours reviewing and revising the default judgment documents at a billing rate of $335 per hour. (See Riley Decl. ¶ 12.)  A second attorney spent a total of 16.5 hours preparing the motion for default judgment and the corresponding exhibits at a rate of $145 per hour. (See Riley Decl. ¶ 12.)  Specifically, the second attorney spent 7.5 hours preparing the default judgment documents, 7.0 hours revising the default judgment documents and gathering exhibits, and an additional 2.0 hours finalizing and electronically filing the default judgment documents. (See Riley Decl. ¶ 12.)

The Court finds the total number of hours to be excessive.  Plaintiff has commenced several substantially similar cases and the work involved in each is nearly identical.  In fact, counsel for Plaintiff has filed virtually identical motions for default judgment in this jurisdiction.

See e.g., Plaintiff's Motion for Entry of Default Judgment, Comcast Cable Communications v. Wiegel, No. 05-2016, (D.N.J. Feb. 28, 2006); Plaintiff's Motion for Entry of Default Judgment, Comcast Cable Communications v. Cabrera, No. 04-3431, 2005 WL 3544698 (D.N.J. June 29, 2005). In Cabrera, Plaintiff's counsel requested and received a total of $1000.00 in attorneys' fees for 5.0 hours of work relating to the default judgment motion. See Cabrera, 2005 WL 3544698, at *3. Given that the motions for default judgment and the corresponding exhibits are nearly identical in this case as in Cabrera, it does not seem reasonable for Plaintiff's counsel to spend 17.0 hours or $2560.00 on this motion for default judgment, when counsel only spent 5.0 hours or $1000.00 on an almost identical motion for default in Cabrera. See Kingvision Pay-Per-View, Ltd. v. Batista, No. CV050614RJDJMA, 2005 WL 2999427, *7 (E.D.N.Y. Oct. 6, 2005) (Report and Recommendation of Azrack, J.) (finding that the number of hours requested was excessive where Plaintiff had filed several virtually identical motions for default judgment, such that the Plaintiff's motion was largely a "cut and paste" job). Therefore, the Court will reduce the fee award in this case to $1000.

In terms of litigation costs, Plaintiff incurred $150.00 in filing fees and $90.00 in process service fees, for a total of $240.00 in litigation costs. Because these costs are properly reimbursable, the Court will award the requested $240 in costs. See 47 U.S.C. § 553(c)(2)(C); Cabrera, 2005 WL 3544698, at *3.

**D. Injunction**

In addition to awarding fees and costs, a court may issue a preliminary or final injunction on such terms that are reasonable to prevent or restrain the defendant from committing any further violations of § 553(a). 47 U.S.C. § 553(c)(2)(A); Cabrera, 2005 WL 3544698, at *3. Where Congress provides for the issuance of a "statutory" injunction, courts often issue an

injunction without resort to the traditional "equitable" prerequisites to providing injunctive relief. See Burlington N.R.R. Co. v. Dep't of Revenue, 934 F.2d 1064, 1074-75 (9th Cir. 1991); TKR Cable Co. v. Cable City Corp., No. 96-2877, 1996 WL 465508, at *10 (D.N.J. Jul. 29, 1996), vacated in part on other grounds, 267 F.3d 196 (3d Cir. 2001); Time Warner Cable of New York City v. Freedom Elec., 897 F. Supp. 1454, 1460 (S.D. Fla. 1995); Sec. Ind. Ass'n v. Bd. of Governors of Fed. Reserve Sys., 628 F. Supp. 1438 (D.D.C. 1986). Because the uncontested facts here establish that Fisher violated section 553(a), this may be one of those situations where it is appropriate to "statutorily" enjoin the Defendant from committing or assisting in the commission of any further violation of section 553(a).

Nonetheless, even if the Court considers the traditional equitable principles governing injunctive relief, a final injunction is still appropriate. Generally, to obtain a permanent injunction, a plaintiff must show that (1) the Court's exercise of equity jurisdiction is proper, (2) the Plaintiff has succeeded on the merits, and (3) the balance of equities tips in favor of injunctive relief. TKR Cable Co. v. Cable City Corp., No. 96-CV-2877, 1998 WL 34028782, *5 (D.N.J. Jan. 27, 1998) (citing Roe v. Operation Rescue, 919 F.2d 857, 868 n.8 (3d Cir. 1990)). The first factor contains three sub-parts which require the plaintiff to show (1) plaintiff has no adequate legal remedy; (2) the threatened injury is real, not imagined; and (3) no equitable defenses exist. Id. at *5.

First, the Court's exercise of equity jurisdiction is proper. A legal remedy is not as effective as an injunction in this case because of the difficulty in detecting and measuring the extent of the Defendant's violations and potential future violations. See id. In addition, the threatened injury is real because the Defendant's purchase and apparent use of an illegal decoding device demonstrate an actual threat that Defendant will continue violating § 553 by

stealing cable services without authorization.  Moreover, because Fisher has not defended in this matter, he has not raised any equitable defenses, and there is no indication that any such defense exists.  Accordingly, the first factor weighs in favor of granting the final injunction.

Second, as noted above, the unchallenged facts of this case demonstrate that Fisher violated § 553 by intercepting and receiving Comcast's cable services without authorization.  Consequently, Comcast has shown success on the merits because it has stated a valid cause of action against the Defendant sufficient to warrant the entry of default judgment.

Third, the balance of equities weighs in favor of granting injunctive relief.  The Defendant's alleged misconduct clearly violates § 553.  It seems the only purpose behind purchasing an unauthorized decoder is to receive unscrambled cable services without having to pay for them.  Time Warner Cable of New York City v. Barbarosa, 2001 WL 118608, at *3 (S.D.N.Y. Jan. 2, 2001), rep. & rec. adopted, 2001 WL 180366 (S.D.N.Y. Jan. 19, 2001); TKR Cable Co., 1998 WL 34028782, at *5.  This conduct not only means lost revenue for Comcast, but it also comes at the expense of the subscribing public.  If individuals like the Defendant are permitted to misappropriate the goods and services of others, there is no incentive to produce or market those products for the benefit of the public at large.  Therefore, because the Defendant's illegal conduct does not serve a legitimate purpose and actually harms both Comcast and the public interest, the balance of equities tips in favor of granting injunctive relief.

Given that § 553 and the relevant equitable considerations authorize an award of injunctive relief in these circumstances, the Court will grant Comcast's request to enjoin Fisher from committing or assisting in the commission of any violation of § 553(a)(1).

## IV.  CONCLUSION

For the foregoing reasons, the Court will enter default judgment against the Defendant in the amount of $10,000 and will award Plaintiff $1000 in attorneys' fees and $240 in costs. The Court will also enjoin the Defendant from committing or assisting in the commission of any further violations of § 553(a)(1).  The accompanying Order shall issue today.


Dated:     7-26-06                              s/ Robert B. Kugler
                                                ROBERT B. KUGLER
                                                United States District Judge